UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20693-CR-UNGARO

18 U.S.C. § 371
50 U.S.C. §§ 1705(a) & (c)
18 U.S.C. § 554(a)
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)
19 U.S.C. § 1595a(d)

MAGISTRATE JUDGE
O'SULLIVAN

FILED BY ___ D.C.
OCT 24 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

vs.

PETER SOTIS and
EMILIE VOISSEM,

    Defendants.
_____/

INDICTMENT

The Grand Jury charges that:

GENERAL ALLEGATIONS

At times material to this Indictment:

The Statutes and Regulations

1. Under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-07, the President of the United States was granted authority to deal with unusual and extraordinary threats to the national security and foreign policy of the United States. Under IEEPA, the President may declare a national emergency through Executive Orders that have the full force and effect of law.

2. On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 13222, which declared a national emergency with respect to the unusual and

extraordinary threat to the national security, foreign policy, and economy of the United States and the unrestricted access of foreign parties to United States goods and technologies, and extended the Export Administration Regulations ("EAR"), 15 C.F.R. parts 730-774. Presidents have issued annual Executive Notices extending the national emergency declared in Executive Order 13222 from the time period covered by that Executive Order through all times relevant to this Indictment. *See, e.g.,* 83 Fed. Reg. 39,871 (Aug. 13, 2019).

3. Pursuant to its authority derived from IEEPA, the Department of Commerce reviewed and controlled the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the EAR. In particular, the EAR restricted the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR imposed licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another. Under the EAR, an export that will transit through a country or countries to a destination identified in the EAR was deemed to be an export to that destination. 15 C.F.R. § 734.13(c).

4. The most sensitive items subject to EAR controls were identified on the Commerce Control List, or "CCL," published at 15 C.F.R. Part 774, Supp. No. 1. Items on the CCL were categorized by Export Control Classification Number ("ECCN"), each of which has export controls requirements depending on destination, end use, and end user.

5. Items categorized under ECCNs required a license for export based on a specific "reason for control." The "reason for control," in turn, determined the countries to which export

of an item required a license. Goods and technology controlled for National Security reasons required a license for export to countries including Libya. All items categorized under ECCN 8A002.q.1 were controlled for export for, among other reasons, National Security reasons. 15 C.F.R. part 774, Supp. No. 1 (entry for ECCN 8A002.q.1 (closed circuit rebreathers)).

6. Pursuant to IEEPA Section 1705(a), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter," and pursuant to Section 1705(c), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section shall" be guilty of a crime.

7. Pursuant to the EAR, Title 15, Code of Federal Regulations, Part 764.2(b), "No person may cause or aid, abet, counsel, command, induce, procure, or permit the doing of any act prohibited, or the omission of any act required, by the EAA, EAR, or any order, license or authorization issued thereunder."

8. Pursuant to the EAR, Title 15, Code of Federal Regulations, Part 764.2(e), "No person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, any item exported or to be exported from the United States, or that is otherwise subject to the EAR, with knowledge that a violation of the EAA, the EAR, or any order, license or authorization issued thereunder, has occurred, is about to occur, or is intended to occur in connection with the item."

### The Commerce Control-List Items

9. A rebreather is an apparatus that absorbs the carbon dioxide of a scuba diver's exhaled breath to permit the rebreathing (recycling) of each breath. This technology produces no bubbles, thereby concealing the diver's activities from those on the surface, and allowing a diver to stay underwater longer compared with normal diving equipment. rEvo III rebreathers ("rebreathers") are on the Commerce Control List and are classified by the Department of Commerce, Bureau of Industry and Security under ECCN 8A002.q.1 (closed circuit rebreathers). An export license was required from the Department of Commerce to export them to Libya.

### Individuals and Companies

10. **PETER SOTIS** was the owner and principal of Add Helium LLC, located in Fort Lauderdale, Florida, in the Southern District of Florida.

11. **EMILIE VOISSEM** was the manager of Add Helium LLC.

12. Individual 1 was a resident of Virginia, who initiated contact with Add Helium LLC to obtain rebreathers on behalf of a Libyan company.

13. Individuals 2 and 3 were managers of U.S. Company 1, and worked with Individual 1 to arrange the rebreather transaction with Add Helium LLC.

14. At all times relevant to this Indictment, no entity or individual appearing in this Indictment obtained the necessary license from the Department of Commerce to export rebreathers to Libya.

## COUNT 1
## Conspiracy to Export Items in Violation of IEEPA
## (18 U.S.C. § 371)

1. Paragraphs 1-14 of the General Allegations above are restated and realleged as if fully set forth herein.

2. Beginning as early as on or about April 5, 2016, and continuing through on or about October 25, 2016, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**PETER SOTIS and
EMILIE VOISSEM,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known to the Grand Jury to export and cause the exportation of goods from the United States to Libya without first having obtained the required license from the Department of Commerce, and did knowingly and willfully transfer an item to be exported, that is, four (4) rEVO III rebreathers, with knowledge that a violation of the EAR was about to occur, in violation of Title 50, United States Code, Section 1705(a), and Title 15, Code of Federal Regulations, Part 764.2.

**PURPOSE AND OBJECT OF THE CONSPIRACY**

3. The purpose and object of the conspiracy was for the defendants to unlawfully transfer goods to be exported from the United States to Libya without a license, and in doing so evade U.S. export controls under IEEPA and the EAR.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

5

4.      The co-conspirators would use electronic mail (email) accounts and other forms of communication to communicate with each other regarding the export of rebreathers to Libya.

5.      After being instructed by a Department of Commerce special agent that the rebreathers could not be exported to Libya while a license determination was pending, the co-conspirators attempted to evade the export restriction by having an intermediary company, U.S. Company 1, arrange to pick up and export the controlled items to Libya without a license.

6.      During a follow-up conversation with the Department of Commerce special agent after the co-conspirators had arranged for the transfer of the rebreathers to a shipping company for exportation, the co-conspirators concealed from the Department of Commerce special agent that the rebreathers had already been picked up and shipped out of the country.

7.      The co-conspirators concealed from U.S. Company 1 that a Department of Commerce special agent had instructed Add Helium not to export the rebreathers.

## OVERT ACTS

In furtherance of this conspiracy, and to accomplish its purpose and object, at least one of the conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.      On or about April 5, 2016, after being contacted by Individual 1 on or about that day, VOISSEM at Add Helium LLC created an invoice to U.S. Company 1 for the order of four (4) rEvo III rebreathers and other diving equipment.

2.      On or about April 20, 2016, SOTIS received a wire from U.S. Company 1 into the Add Helium LLC bank account in the amount of $40,000 for the purchase of four (4) rEvo III rebreathers and other diving equipment.

3.      On or about May 3, 2016, a representative of Add Helium LLC accepted credit card

6

payments totaling $50,000 from Individual 2 for the purchase of the four (4) rEvo III rebreathers and other diving equipment.

4.     On or about June 6, 2016, VOISSEM contacted Individuals 1, 2, and 3, and quoted the price of air freight to Libya as $5,297.

5.     On or about July 7, 2016, a representative of Add Helium LLC accepted a wire payment in the amount of $22,923.30 for the cost of shipping to Libya and the balance of payment for other diving equipment.

6.     After VOISSEM received an email from Add Helium's shipping company on or about July 27, 2016 that stated, "Hi Emilie This shipment to Libya might be more complicated than originally thought. My compliance dept. says to call dept of commerce and state dept. to see if you need any special license to ship since Libya is on restricted list," VOISSEM sent an email to SOTIS on or about July 28, 2016, stating that their shipping company had refused to send the shipment to Libya because the Department of Commerce needed to approve each item and that there were "red flags" with the shipment because of "concern for terrorism" and "there was a potential hold with the Department of Commerce."

7.     On or about August 2, 2016, VOISSEM e-mailed Individuals 2 and 3 and stated: "It may be appropriate and in the best interest of time for the shipping to go through you. We do apologize regarding this shipping issue, however it is out of our hands and there was no indication from our shipping company of any issues or concerns until they went to book it. Would you still want the items to be picked up here at Add Helium with your shipping company?"

8.     After a Department of Commerce special agent instructed VOISSEM and SOTIS on or about August 4, 2016, not to export the rebreathers while a license determination was pending, VOISSEM and SOTIS continued to communicate with Individuals 2 and 3 to arrange for

7

them to have a shipping company identified by Individuals 2 and 3 pick up the rebreathers and ship to Libya.

9. After on or about August 4, 2016, SOTIS instructed his employees to cease communicating with him over e-mail regarding the rebreather shipment to Libya.

10. On or about August 9, 2016, knowing that the rebreathers were being exported to Libya, VOISSEM provided the four rebreathers to a transportation company that picked them up from Add Helium and transported them to a shipping company in Miami, Florida for export to Libya.

11. On or about August 17, 2016, during a phone conversation about the rebreathers with a Department of Commerce special agent, VOISSEM and SOTIS concealed the fact that the rebreathers had already been shipped to Libya.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Export and Attempted Export of Goods in Violation of IEEPA
### (50 U.S.C. §§ 1705(a) & (c))

1. Paragraphs 1-14 of the General Allegations above are restated and realleged as if fully set forth herein.

2. Beginning on or about August 9, 2016, to on or about August 12, 2016, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**PETER SOTIS and
EMILIE VOISSEM,**

did knowingly and willfully export and attempt to export and cause to export goods, that is, four (4) rEvo III rebreathers, from the United States to Libya, without first having obtained the

8

required license from the Department of Commerce and did knowingly and willfully transfer an item to be exported, that is, four (4) rEVO III rebreathers, with knowledge that a violation of the EAR was about to occur.

In violation of Title 50, United States Code, Sections 1705(a) and (c), Title 15, Code of Federal Regulations, Part 764.2, and Title 18, United States Code, Section 2.

## COUNT 3
### Smuggling of Goods
### (18 U.S.C. § 554(a))

1. Paragraphs 1-14 of the General Allegations above are restated and realleged as if fully set forth herein.

2. Beginning on or about August 9, 2016, to on or about August 12, 2016, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**PETER SOTIS and**
**EMILIE VOISSEM,**

did fraudulently and knowingly export and send, and attempt to export and send, from the United States to a place outside thereof, that is, Libya, any merchandise, article, and object, that is, four (4) rEvo III rebreathers, contrary to any law and regulation of the United States, and did conceal and facilitate the transportation and concealment of such merchandise, article, and object prior to exportation, knowing the same to be intended for exportation contrary to any law and regulation of the United States, that is, Title 50, United States Code, Sections 1705(a) and (c), and Title 15, Code of Federal Regulations, Part 764.2; in violation of Title 18, United States Code, Sections 554(a) and 2.

## COUNT 4
## False Statements
## (18 U.S.C. § 1001(a)(2))

On or about March 27, 2019, in Miami-Dade County, in the Southern District of Florida, in a matter within the jurisdiction of the Department of Commerce, an agency of the executive branch of the Government of the United States, the defendant,

**EMILIE VOISSEM,**

did knowingly and willfully make a false, fictitious, and fraudulent statement and representation as to a material fact during an interview with a Special Agent of the Department of Commerce, in that she represented that another Special Agent of the Department of Commerce had not instructed her on or about August 4, 2016, that the rEvo III rebreathers could not be exported while a license determination was being conducted when, in truth and in fact, and as the defendant then and there well knew, a Special Agent of the Department of Commerce had instructed her on or about August 4, 2016, that the rEvo III rebreathers could not be exported while a license determination was being conducted, in violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of property in which the defendants, **PETER SOTIS** and **EMILIE VOISSEM**, have an interest.

2. Upon conviction of a violation of Title 50, United States Code, Section 1705(a), a conspiracy to commit such violation, or Title 18, United States Code, Section 554, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States the following property:

   a. any property, real and personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Section 981(a)(1)(C); and

b.  any merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation, pursuant to Title 19, United States Code, Section 1595a(d). Specifically, the following merchandise shall be forfeited: four (4) rEvo III rebreathers that were exported or attempted to be exported to Libya on or about August 12, 2016.

3.  The property subject to forfeiture includes a forfeiture money judgment in a sum of money equal in value to: any property constituting or derived from any proceeds traceable to a violation alleged in this Indictment or any goods or tangible items that were the subject of the violations, any tangible property that was used in the export or attempt to export, any property used to facilitate the exporting or sending of merchandise that was the subject of the violations, or the attempt thereof, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation, and any property involved in the money laundering violation, or any property traceable to such property.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 19, United States

Code, Section 1595a(d), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_____
MICHAEL THAKUR
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA               CASE NO. _____

vs.
                                       **CERTIFICATE OF TRIAL ATTORNEY***
**PETER SOTIS AND EMILIE VOISSEM,**

    **Defendants.**
_____/     Superseding Case Information:

**Court Division:** (Select One)                   New Defendant(s)        Yes _____  No _____
                                                   Number of New Defendants _____
Miami  X      Key West _____                       Total number of counts   _____
FTL  ___      WPB _____   FTP _____

    I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)         No
   List language and/or dialect        _____

4. This case will take    4-5    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                          (Check only one)

   I    0 to  5 days      X            Petty       _____
   II   6 to 10 days      _____        Minor       _____
   III  11 to 20 days     _____        Misdem.     _____
   IV   21 to 60 days     _____        Felony        X
   V    61 days and over  _____

6. Has this case been previously filed in this District Court?  (Yes or No)     No
   If yes:
   Judge: _____        Case No. _____
          (Attach copy of dispositive order)

   Has a complaint been filed in this matter?   (Yes or No)      No
   If yes:
   Magistrate Case No.            _____
   Related Miscellaneous numbers: _____

   Defendant(s) in federal custody as of  _____
   Defendant(s) in state custody as of    _____

   Rule 20 from the District of           _____
   Is this a potential death penalty case? (Yes or No)     No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes    X    No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes    X    No

                                                                                                                               */s/*
                                                                     MICHAEL THAKUR
                                                                     ASSISTANT UNITED STATES ATTORNEY
                                                                     FLORIDA BAR NO. 1011456

*Penalty Sheet(s) attached

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** PETER SOTIS

**Case No:** _____

Count #: 1

Conspiracy to violate IEEPA

Title 18, United States Code, Section 371

**\*Max. Penalty:** 5 Years' Imprisonment, 3 Years' Supervised Release; $250,000 Fine


Count #: 2

Attempted Export to Libya without a License

Title 50, United States Code, Sections 1705(a)&(c)

**\* Max. Penalty**: 20 Years' Imprisonment, 5 Years' Supervised Release, $1,000,000 Fine


Count #:3

Smuggling of Goods

Title 18, United States Code, Section 554(a)

**\*Max. Penalty:** 10 Years' Imprisonment, 3 Years' Supervised Release, $250,000 Fine


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  EMILE VOISSEM

**Case No**: _____

Count #: 1

Conspiracy to violate IEEPA

Title 18, United States Code, Section 371

*__Max. Penalty:__ 5 Years' Imprisonment, 3 Years' Supervised Release; $250,000 Fine


Count #: 2

Attempted Export to Libya without a License

Title 50, United States Code, Sections 1705(a)&(c)

* __Max. Penalty__: 20 Years' Imprisonment, 5 Years' Supervised Release, $1,000,000 Fine


Count #: 3

Smuggling of Goods

Title 18, United States Code, Section 554(a)

*__Max. Penalty:__ 10 Years' Imprisonment, 3 Years' Supervised Release, $250,000 Fine


Count #: 4

False Statement

Title 18, United States Code, Section 1001(a)(2)

*__Max. Penalty:__ 5 Years' Imprisonment, 3 Years' Supervised Release, $250,000 Fine

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.